Case 2:14-cv-00455   Document 87   Filed in TXSD on 09/06/16   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
September 07, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| DIANA ACOSTA, et al., § | |
| § | |
| Plaintiffs, § | |
| v. § | CIVIL NO. 2:14-CV-455 |
| § | |
| SUOMY S.R.L.; SUOMY S.P.A.; and § | |
| VAN LEEUWEN ENTERPRISES, § | |
| INC., § | |
| § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

The Court has before it Defendant Van Leeuwen Enterprises, Inc.'s ("Van Leeuwen") motion for summary judgment, Dkt. No. 75; Plaintiffs' response, Dkt. No. 77; and Van Leeuwen's reply, Dkt. No. 78. Van Leeuwen also moves for leave to file a crossclaim against Defendant Suomy, S.p.A., Dkt. No. 72. For the reasons that follow, the Court grants both motions.

### I.  Background

This case stems from a motorcycle accident that allegedly occurred in Nueces County, Texas on October 24, 2012. Pls.' 1st Am. Orig. Pet. ¶¶ 4.1–4.2, Dkt. No. 1 Ex. 17. Plaintiffs claim that defects in a Suomy Airtrix motorcycle helmet ("the helmet") worn by decedent Brian Barrera ("Barrera") "were a producing cause of [his] injuries and death." *Id.* ¶ 4.6.

Plaintiffs named ten defendants in their First Amended Original Petition. Pls.' 1st Am. Orig. Pet. ¶¶ 3.3–3.12. Plaintiffs plead that Defendants designed, marketed, manufactured, distributed, sold, and placed Suomy Airtrix helmets into the stream of commerce. *Id.* ¶¶ 5.1–5.2. All but two defendants have been dismissed. *See* Dkt. No. 63 at 1; Dkt. No. 39 at 2 (dismissing subject to tolling agreement reached by Plaintiffs and respective defendants); Dkt. No. 47 at 6.

Defendant Suomy, S.p.A. ("Suomy"), an Italian corporation, answered Plaintiffs' amended petition on March 26, 2016, Dkt. No. 33. This Court granted Suomy's counsel leave to withdraw on January 15, 2016. Dkt. No. 67 at 2. No attorney has since appeared on Suomy's behalf.

Unlike Suomy, Van Leeuwen, the other remaining defendant, continues to litigate this case. It has filed a motion for summary judgment seeking dismissal of plaintiffs' claims against it. Dkt. No. 75. Van Leeuwen separately moves for leave to file a crossclaim against Suomy, Dkt. No. 72.

## II.  Summary Judgment

Section 82.003(a) of the Texas Civil Practice & Remedies Code provides that "A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves" one or more of seven listed exceptions. Tex. Civ. Prac. & Rem. Code § 82.003 (West 2016). Plaintiffs do not argue in their response that Van Leeuwen's evidence is insufficient to carry its initial burden at summary judgment. Nor do Plaintiffs contend that they have produced sufficient evidence to create a fact issue as to any of the enumerated exceptions to § 82.003(a).[1] Instead, Plaintiffs argue that the undisputed evidence of

---

[1] Because the facts surrounding Van Leeuwen's conduct regarding the helmet Barrera allegedly wore are undisputed, the Court need not decide who bears the burden to prove initially that Van Leeuwen is a "seller that did not manufacture" the product, § 82.003(a). *See Transcont'l Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 701 (Tex. App.–Hous. [14th Dist.] 2010) ("presum[ing] for the sake of argument that, . . . . [the putative seller] first must show that it is a "seller" to take advantage of section 82.003"); *see also Dennis v. Giles Group, Inc.*, No. 04-07-00280-CV, 2008 WL 183062, at *7 (Tex. App.–San Antonio Jan. 23, 2008) ("Because we decide that Dennis met his burden of proof for defending the motion for summary judgment under section 82.003(a)(7)(B), we need not address his statutory construction concerns."). Nor need the Court allocate the burden of proof on the exceptions enumerated in § 82.003(a) for the same reason and because Plaintiffs do not invoke any of those exceptions. *Compare Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 545 & n.1 (Tex. App.–San Antonio 2012) (stating that purported nonmanufacturing seller "ultimately had the burden of proof" at summary judgment under § 82.003(a)(7)(B)), *with Diamond H. Recognition LP v. King of Fans, Inc.*, 589 F. Supp. 2d 772, 776 (N.D. Tex. 2008) (collecting cases and characterizing § 82.003(a) as "a defensive device that provides a general rule of no liability unless the plaintiff can prove facts invoking an exception to the rule"); *Gonzalez v. Reed-Joseph Int'l Co.*, Civ. A. NO. 4:11–cv–01094, 2013 WL 1578475, at *8 (S.D. Tex. Apr. 11, 2013) (holding at summary judgment that "Section 82.003 clearly places the burden of proof upon a plaintiff to establish one of the exceptions to nonliability; it is not an affirmative defense"

Van Leeuwen's involvement in the helmet's importation creates a fact dispute over whether Van Leeuwen manufactured the helmet within the meaning of § 82003(a). *See* § 82.003(a) (applying only to "seller that did not manufacture" a product). In support of their position, Plaintiffs refer the court to the National Traffic and Motor Vehicle Safety Act (the "Vehicle Safety Act"), 49 U.S.C. § 30102(a)(5)(B); The Consumer Products Safety Act ("Safety Act"), 15 U.S.C. §§ 2051–2089; and regulatory pronouncements by federal agencies promulgated pursuant to those statutes. Plaintiffs assert that those authorities show that "Van Leuuwen is a manufacturer under United States law." Dkt. No. 77 at 6; *accord id.* at 7, 13. Applying Texas law to this diversity case, the Court concludes that based on the federal authorities Plaintiffs cite the Texas Supreme Court would not likely hold that there is a fact dispute over whether Van Leeuwen manufactured the helmet at issue here within the meaning of § 82.003(a).[2]

### A.   Summary Judgment Standard

"Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Brumfield v. Hollins*, 551

---

(quoting *Gonzalez v. Estes, Inc.*, No. SA–10–CA–0038–XR, 2010 WL 610778 (W.D. Tex. Feb. 19, 2010))).

[2]   Plaintiffs make no effort to show "that [Suomy] is . . . . not subject to the jurisdiction of the court." Tex. Civ. Prac. & Rem. Code § 82.003(a)(7)(B). "Usually a party waives personal jurisdiction by failing to raise the issue when filing a responsive pleading or making a general appearance." *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(h)). Two defendants with the word "Suomy" in their names filed separate motions to dismiss for lack of personal jurisdiction in this action. Dkt. Nos. 6, 28. The Court denied Defendant Suomy America, Inc.'s motion as moot after Plaintiffs agreed to dismiss it and certain other defendants subject to a tolling agreement. *See* Order 2, Apr. 13, 2015, Dkt. No. 39. The Court dismissed Defendant Suomy Moto Sport, S.r.L., for lack of subject-matter jurisdiction on July 13, 2015. Dkt. No. 47 at 5. Defendant Suomy S.p.A. joined neither motion to dismiss for lack of personal jurisdiction. *See* Dkt. No. 6 at 1 (bringing motion on behalf of "Suomy America"); Dkt. No. 28 at 1 (moving on behalf of "Suomy Motosport S.r.l."). Lack of personal jurisdiction does not appear among the 27 affirmative defenses pleaded in Suomy's answer. *See* Dkt. No. 33 ¶¶ 43–69. This Court does not resolve the question conclusively, but § 82.003(a)(7)(B) does not facially apply here because Defendant Suomy S.p.A. has apparently waived the defense of lack of personal jurisdiction. *See, e.g.*, *S & D Trading Acad., LLC v. AAFIS Inc.*, Civ. A. No. G-06-739, 2007 WL 3220167, at *5 (S.D. Tex. Oct. 26, 2007) (discussing and applying rule that "the defense of lack of personal jurisdiction is only waived if a party files a Rule 12 motion or an answer without asserting that defense").

F.3d 322, 326 (5th Cir. 2008) (citing *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006)); *accord* Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all evidence in the light most favorable to the non-moving party at summary judgment. *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)); *Piazza's Seafood World*, 448 F.3d at 752 (citation omitted); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004) (citation omitted). Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc, per curiam).

The party moving for summary judgment bears the "burden of showing this Court that summary judgment is appropriate." *Brumfield*, 551 F.3d at 326 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden of production a party must initially carry depends upon the allocation of the burden of proof at trial. *See Shanze Enters., Inc. v. Am. Cas. Co. of Reading*, 150 F. Supp. 3d 771, 776 (N.D. Tex. Dec. 15, 2015) ("Each party's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial."). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Tesoros Trading Co. v. Tesoros Misticos, Inc.*, 10 F. Supp. 3d 701, 709 (N.D. Tex. 2014) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in *Fontenot*); *accord Shanze Enters., Inc.*, 150 at 776. On the other hand, when the nonmovant will bear the burden of proof at trial, the movant may discharge its initial burden at summary judgment by "merely point[ing] to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an

issue of material fact warranting trial." *Transam. Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995) (per curiam); *see Celotex*, 477 U.S. at 323–25. Once the party seeking summary judgment has discharged its initial burden, the nonmovant must come forward with specific evidence to show that there is a genuine issue of fact. *Lockett,* 337 F. Supp. 2d at 891; *see Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993). The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must cite specific facts identifying a genuine issue to be tried in order to avoid summary judgment. *See* Fed. R. Civ. P. 56(c); *Piazza's Seafood World*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)); *accord* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

  **B.**  **Undisputed Facts**

In support of its motion for summary judgment, Van Leeuwen submits three photographs, Dkt. No. 75 Ex. A, B, E; Suomy's answers to Van Leeuwen's first set of interrogatories, *id.* Ex. C; and a transcript of the deposition taken February 18, 2016, of its corporate representative, Curt Van Leeuwen ("C. Van Leeuwen"), *id.* Ex. D. Plaintiffs attach the entire transcript of C. Van Leeuwen's deposition to their response. Dkt. No. 77-3 Ex. A, Attach. 1.

Plaintiffs and Van Leeuwen emphasize different aspects of C. Van Leeuwen's testimony and the other summary-judgment evidence, but neither disputes Van Leeuwen's factual role in the design, manufacture, and distribution of the helmet

worn by Barrera. Presumably using the words in their ordinary sense, Suomy affirmed in its answers to interrogatories that it "designed and manufactured the helmet" at issue. Dkt. No. 75 Ex. C at 6. A photograph of what Van Leeuwen represents to be the helmet's instruction manual includes the word "Suomy" on what appears to be its title page but makes no mention of Van Leeuwen. *See* Dkt. No. 75 Ex. E. Plaintiffs do not challenge Van Leeuwen's implicit assertion that a reasonable fact finder could infer from that photograph that Suomy, but not Van Leeuwen, held itself out as having designed and assembled the helmet. *See id.* Unchallenged portions of C. Van Leeuwen's deposition, Dkt. No. 75 Ex. D, Dkt. No. 77-3 Ex. A, Attach. 1, further clarify Van Leeuwen's role. C. Van Leeuwen testified that Van Leeuwen's role was limited to importing helmets only; he understood that Suomy designed and manufactured the helmets Van Leeuwen imports. *Ibid.* at 28:3–14, 30:25–31:4. Nor, on this record, does Van Leeuwen open the helmets' boxes or modify them after receipt. *See ibid.* at 100:3–16 (testifying that boxes are not opened for any reason); *accord ibid.* at 91:15–21 (giving same testimony in substance and stating that Van Leeuwen did not "alter or modify this helmet in any way once it was received"). Van Leeuwen's role is undisputedly limited to processing boxes and forwarding them to others. *See ibid.* at 82:10–11.

Plaintiffs do not argue that Van Leeuwen had a greater role in the design, manufacture, or distribution of the helmet in question. On the contrary, Plaintiffs state in their response that "[i]t is undisputed that Van Leeuwen Enterprises, Inc. is an importer of foreign products, including Suomy helmets, which Van Leeuwen imports from Italy, Taiwan, and Jakarta." Dkt. No. 77 at 3. Instead, Plaintiffs highlight Van Leeuwen's admissions of what it does not do. Specifically, Plaintiffs cite portions of C. Van Leeuwen's deposition in which he answers questions about his expectations of a "competent manufacturer" of helmets. C. Van Leeuwen Dep. 75:16–19; *see* Resp. to Mot. Summ. J., Dkt. No. 77. When asked whether "Van Leeuwen do[es] any quality control regarding the helmets that it imports into the United States," for instance, C. Van Leeuwen responded "[w]e do not . . . that's the manufacturer's responsibility." C. Van Leeuwen Dep. at 70:5–9; *see ibid.* 81:14–82:1,

82:6–11 (admitting that Van Leeuwen does not conduct visual testing, impact testing, disassemble helmets, or send them to a laboratory for tests and stating "we're just a distributor. Boxes in, boxes out"). Accordingly, Plaintiffs argue that a genuine factual dispute exists over whether Van Leeuwen breached the duty of care owed by a manufacturer. *See* Resp. to Mot. Summ. J. 9–10, Dkt. No. 77. With the undisputed facts of Van Leeuwen's involvement in the design, assembly, and distribution of the helmet not in dispute, the Court turns to the legal question of whether Van Leeuwen can be held liable as a manufacturer under the governing law.

### C. Texas's Substantive Law Applies in this Diversity Case.

The Court begins by determining the relationship between Texas law and the federal law Plaintiffs cite. Van Leeuwen relied solely on the grant of diversity jurisdiction in 28 U.S.C. § 1332(a) to remove this action to this Court. Notice Removal 3, Dkt. No. 1. No party has proposed an alternate basis for this Court's exercise of jurisdiction. In either amended petition, Plaintiffs plead no claims under the federal statutes they cite in their response to Van Leeuwen's motion for summary judgment. *See* Dkt. No. 1 Ex. 1-17. Accordingly, Plaintiffs plead state-law claims only, and this Court's jurisdiction is founded solely on diversity of citizenship under 28 U.S.C. § 1332(a).

Under the Erie[3] doctrine, this Court applies state substantive law and federal procedural law in a diversity case. *See, e.g.*, *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 800 (5th Cir. 2015) ("Because jurisdiction is based on diversity of citizenship, 'Texas substantive law and federal procedural law apply to these state-law claims.'") (quoting *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015)); *Weiser-Brown Op'g Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 517 (5th Cir. 2015) ("In this diversity case, this court applies state substantive law, but federal procedural law.") (citing *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014)). When applying Texas substantive law, this

---

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Court "must interpret Texas's statutes the way the Texas Supreme Court would." *Weiser-Brown Op'g Co.*, 801 F.3d at 518 (citing *F.D.I.C. v. Shaid*, 142 F.3d 260, 261 (5th Cir. 1998)); *see Health Care Serv. Corp. v. Methodist Hosps. of Dallas,* 814 F.3d 242 (5th Cir. 2016) ("When interpreting a Texas statute, we follow "the same rules of construction that a Texas court would apply . . . ."). Hence, as Plaintiffs mount no constitutional challenge to a Texas statute, determining the relationship between the federal statutes cited by Plaintiffs to Chapter 82 of the Texas Civil Practice & Remedies Code requires the court to apply only Texas law. *See Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981) ("Absent a claim that the statutes or their application are contrary to the federal Constitution, the relationship between section 12.42 and article 4476-15 is purely a question of state law. State courts are the ultimate expositors of their own states' laws . . . ."). Thus, the Erie doctrine compels this Court to ask whether the Texas Supreme Court would hold Van Leeuwen manufactured the helmet within the meaning of § 82.003(a) on the undisputed facts here and in light of the federal authorities Plaintiffs cite. *See Price v. City of San Antonio,* 431 F.3d 890, 892 (5th Cir. 2004) ("To construe a Texas statute, we look to how Texas's highest court would resolve the issue." (citing *C&H Nationwide, Inc. v. N.W. Bank Tex. NA*, 208 F.3d 490, 495 (5th Cir. 2000))).

Neither Plaintiffs nor Van Leeuwen cite a Texas Supreme Court case answering the precise question under § 82.003(a) presented here, and the Court has located none. Where a state's highest court has not spoken on the issue, this Court must hazard an "Erie guess" on the question. *See Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) ("Because the Texas Supreme Court has never ruled on whether the Texas Workers' Compensation Act 'obligates' a nonsubscribing employer to compensate an employee for injuries sustained due to employer negligence, we must make an 'Erie guess' . . . . ."). When making an Erie guess, this Court may look to

> (1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the

rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Id.* quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006); *see Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000) (citing *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.5 (5th Cir.1987)) (considering decisions of intermediate state appellate courts). This Court "must attempt to predict state law, not to create or modify it" when making an Erie guess. *Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 258 (5th Cir. 2013) (quoting *Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 316 (5th Cir. 2012)).

### D. There Is No genuine Dispute That Van Leeuwen Does Not Qualify as a "Manufacturer." of the Helmet Under § 82.003(a).

Texas's strict-liability law generally applies to a supplier that places a product into the stream of commerce. *Oser v. Wal-Mart Stores, Inc.*, 951 F. Supp. 115, 119 (S.D. Tex. 1996) ("[A supplier's] liability is not rested upon what he knew or should have known when he manufactured or sold the product; it rests on his placing into the stream of commerce a product which is demonstrated at trial to have been dangerous." (quoting *Gen. Motors Corp. v. R.M. Hopkins*, 548 S.W.2d 344, 351 (Tex. 1977)) (alteration in original, other citation omitted)). The Texas Supreme Court has explained that Chapter 82 of the Texas Civil Practice & Remedies Code is intended "to 'protect innocent sellers who are drawn into products liability litigation solely because of the vicarious nature of that liability by assigning responsibility for the burden of the litigation to product manufacturers,'" *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 879 (W.D. Tex. 2010) (quoting *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex. 2006)). Under Chapter 82, "[p]rimary liability is effectively placed on the manufacturer, as opposed to the innocent seller, since manufacturers are usually in a better position to recognize and remedy product defects." *Id.* (citing *Graco, Inc. v. CRC, Inc. of Tex.*, 47 S.W.3d 742, 745 (Tex. App. 2001)).

Texas courts ordinarily give words used in a statute their "plain and common meaning[, [b]ut if a statute defines a term, a court is bound to construe that term by its statutory definition only." *Tex. Dept. of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (internal citations omitted). With Chapter 82's general purposes in mind, the Court begins with the statutorily supplied definitions of the terms "seller" and "manufacturer."

> (3) "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.
> (4) "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

§ 82.001(3)–(4).

In *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444 (2008), the Texas Supreme Court distinguished between a seller and manufacturer under Chapter 82 based on facts analogous to this case. The dispute in SSP Partners concerned the indemnity provision of § 82.002(a), which provides that "[a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." *SSP Partners* arose out of a house fire in which a boy was killed. 275 S.W.3d at 447. His parents brought products-liability claims against companies involved in the design, manufacture, and distribution of a disposable lighter, alleging that it had a defective child-resistant mechanism. *Id.* The record showed that the lighters were designed and made in Hong Kong and exported to the U.S. by Chinese companies. *See id.* at 448. A subsidiary of one of those companies, "a California corporation, . . . importe[d], promote[d], and distribute[d] the lighters in the United States, sharing the profits with its parent." *Id.*

Applying § 82.001(4), the Texas Supreme Court held that the California corporation was not a manufacturer of the lighter at issue on those facts and so did not have to indemnify downstream sellers of the lighter under § 82.002(a). *See id.* at 449–50. The SSP Partners' court first rejected the argument that "because [the California corporation] imports WAX-brand lighters from Gladstrong Hong Kong in China, it 'produces' them, as that word is commonly understood, and is therefore a manufacturer." *Id.* at 449. It reasoned as follows:

> We do not disagree that the dictionary meaning of a producer is broad enough to encompass distributors, but to equate them in the statute would destroy all distinction between manufacturers and sellers. If all sellers were manufacturers because all sellers are producers, then the indemnity obligation would be unlimited; everyone in the distribution chain would owe everyone else indemnity, contrary to the statute's stated purpose of requiring indemnity only by manufacturers. The word "producer" cannot be read to confound the statute; rather, the word's meaning in the statutory definition is confined by the words that surround it: "designer, formulator, constructor, rebuilder, fabricator, . . . compounder, processor, or assembler" —that is, someone involved in making a product. Gladstrong USA imports lighters; it has nothing to do with making them.

*Id.* at 449–50 (footnotes omitted) (ellipsis in original). The SSP Partners court also found unpersuasive the argument that "the Federal Consumer Product Safety Act defines a 'manufacturer' to include an importer, reflecting a common commercial understanding, and so should section 82.001(4)." *Id.* at 451 (citing 15 U.S.C. § 2052(a)(11) (2006)). The Texas Supreme Court contrasted the purposes of the Safety Act and § 82.002, stating that the federal statute was designed to "protect consumer safety, not to adjust liabilities among distributors." *Id.* (citing 15 U.S.C. § 2051(b)'s statement of Act's purpose). Based on a distinction between the federal purpose of protecting consumer safety nationally and allocating liability in Texas, The SSP Partners court concluded that the "federal Act's treatment of importers as manufacturers suggests nothing about the scope of the indemnity obligation under chapter 82." *Id.* ("Imposing safety standards on everyone that introduces a product into the American marketplace, importers and manufacturers alike, is obviously

important to consumer safety. Imposing a no-fault indemnity obligation only on importers and not other sellers is certainly not essential to a fair allocation of responsibility.").

The Texas Supreme Court would likely extend *SSP Partners* to hold that a seller that "imports [the product, but] . . . has nothing to do with making [the product]" did not manufacture it under § 82.003(a). Though the precise question before the SSP Partners court concerned indemnity under § 82.002(a), that court applied the definition of "manufacturer" at issue here. *See id.* at 447, 449 (quoting and applying definition). Moreover, § 82.003(a), like the indemnity provisions of the previous section of the Texas Civil Practice & Remedies Code, generally allocates liability between manufacturers and sellers. *See* § 82.003; *Casas v. Tire Corral, Inc.*, Civ. A. No. M-04-123, 2005 WL 6773889, at *4 (S.D. Tex. Mar. 31, 2005) (holding that the "clear intent of § 82.003(a)(3) is to preclude liability unless the nonmanufacturing seller has committed an error independent from the manufacturer, such as selecting the wrong component for installation or mis-installing the components" (internal quotation marks omitted)).

Further, under the reasoning of *SSP Partners*, the fact that the Safety Act defines an importer as a manufacturer sheds no light on whether the Texas legislature intended to include an importer in the definition of a manufacturer under § 82.001(4). *See SSP Partners*, 275 S.W.3d at 450. Following the same analytical path, the Vehicle Safety Act's inclusion of an importer in its definition of a manufacturer says nothing about the Texas legislature's intent in § 82.003(a). *See* 49 U.S.C. § 30102 (a)(5)(B) (including in definition of "manufacturer . . . a person . . . importing motor vehicles or motor vehicle equipment for resale"); *see also id.* § 30102(a)(7)(C) (including "any device or an article or apparel, including a motorcycle helmet" in definition of "motor vehicle equipment"). By its terms, the Vehicle Safety Act declares that its purpose is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." *Id.* § 30101. Indeed, Congress included a provision in the Vehicle Safety Act that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at

common law," *id.* § 30103(e), showing that Congress envisioned the NHTSA's safety standards as properly coexisting with state-law liability standards in certain circumstances. *See Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 331 (2011) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 868 (2000)) ("Since tort law is ordinarily 'common law,' we held that 'the presence of the saving clause,' makes clear that Congress intended state tort suits to fall outside the scope of the express pre-emption clause" of the [Vehicle Safety Act].). Accordingly, the distinction the SSP Partners court drew between the purposes of assuring consumer safety and allocating responsibility can be drawn with at least equal credulity about the Vehicle Safety Act in light of its stated purposes. *See* 275 S.W.3d at 450; 49 U.S.C. § 30101 (2012).

Plaintiffs cite cases discussing both federal statutes, but all but one case on which Plaintiffs rely address questions of federal law. *See Snyder Computer Sys. v. U.S. Dep't of Transp.*, 13 F. Supp. 3d 848, 859–60 (S.D. Ohio 2014) (discussing federal regulatory framework and reviewing National Highway Transit Authority's "Recall Remedy Order [as] a final agency action subject to review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*); *Lundquist v. Am. Honda Motor Co.*, 773 F. Supp. 1195, 1200–02 (W.D. Wisc. 1988) (analyzing whether 16 CFR § 1115 *et seq.* falls within the term "any other rule" used to create a private right of action in the Consumer Product Safety Act, 15 U.S.C. § 2072(a)); *In re Stand 'N Seal, Prods. Liab. Litig.*, MDL Docket No. 1804, 2009 WL 1635599, at *2–4 (N.D. Ga. June 9, 2009) (analyzing whether plaintiffs had private right of action for violating provisions of the Consumer Product Safety Act). Therefore, these authorities would likely be distinguished by the Texas Supreme Court as unhelpful in deciding whether Van Leeuwen manufactured the helmet under § 82.003(a). *See SSP Partners*, 275 S.W.3d at 450. Plaintiffs also cite *Bigelow v. New York Lighter*, Civ. A. NO. A-03-CA-340 LY, slip op. (W.D. Tex. June 27, 2005), available in the instant action at Dkt. No. 77-5. The defendant importer injected compliance with the Safety Act as a defense to liability into that case. *See* Dkt. No. 77-4 at 23–25 (applying rule that "[c]ompliance with government safety standards constitutes

strong and substantial evidence that a product is not defective" (citing *Lorenz v. Celotex Corp.*, 896 F.2d 148, 150–51 (5th Cir. 1990)). To the degree it may otherwise apply here, the Bigelow court's analysis predates *SSP Partners*'s exposition of the term "manufacturer" in Chapter 82, rendering *Bigelow* unpersuasive on the question at hand. *See* 275 S.W.3d at 449–50.

For these reasons, the Court predicts that the Texas Supreme Court would extend *SSP Partners* to manufacturer liability under § 82.003(a) on the undisputed facts of this case. Because no party attempts to show that one of the enumerated exceptions of § 82.003(a) applies, the Court dismisses Plaintiffs' claims against Van Leeuwen.

### III. Good Cause Exists to Amend the Scheduling Order.

The parties have filed two motions seeking to amend the scheduling order. In the second, Van Leeuwen and Plaintiffs jointly ask the Court to reopen discovery to allow them to conduct further fact and expert discovery after the Court rules on Van Leeuwen's motion for summary judgment. *See* Dkt. No. 86 ¶¶ 5–8. Van Leeuwen separately moves for leave to plead new crossclaims for contractual indemnification and contribution against Suomy. Dkt. No. 72. Analyzing both motions under Rule 16(b)(4), the Court finds good cause to amend the scheduling order as the parties propose.

The Court construes Van Leeuwen's motion for leave to file a crossclaim as a motion to amend its answer. Van Leeuwen attached a proposed document pleading the substance of its crossclaim to its motion for leave. *See* Dkt No. 72-1 Ex. A. While the list of pleadings allowed by Federal Rule of Civil Procedure 7(a) includes "an answer to a crossclaim," Fed. R. Civ. P. 7(a)(4), a crossclaim does not appear on that list, *see id.* R. 7(a) (preceding list of pleadings with statement that "[o]nly these pleadings are allowed"). The Court therefore treats Van Leeuwen's motion for leave to file a crossclaim as a motion for leave to amend its answer. *See Hume v. Consol. Grain & Barge, Inc.*, Civ. A. No. 15–0935, 2016 WL 430432, at *1 (E.D. La. Feb. 4, 2016) (construing defendant's motion for leave to add crossclaim for contractual

indemnity "as a motion to amend its answer and add the . . . cross-claim"). Van Leeuwen filed the instant motion for leave after the deadline set by the scheduling order to amend pleadings. *See* Scheduling Order 1, Dkt. No. 44 (setting deadline of June 30, 2015, to amend pleadings and join new parties; Dkt. No. 72 (motion filed Feb. 5, 2016). Van Leeuwen must therefore satisfy the good-cause standard that applies to a request to modify a scheduling order under Federal Rule of Civil Procedure 16(b)(4). *See Hume*, 2016 WL 430432, at *2 (citing *S&W Enters., L.L.C. v. S. Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003)) (applying Rule 16(b)(4) standard because motion for leave to add crossclaim was filed after deadline to amend pleadings); *Vanguard Group, Inc. v. Shikhabolhassani*, Civ. A. No. H–14–0061, 2014 WL 6694802, at *7 (S.D. Tex. Nov. 26, 2014) (citation omitted) (same).

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." When making a good-cause determination under Rule 16(b)(4) on a request to amend a pleading, this Court considers four factors: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., L.L.C.*, 315 F.3d at 536 (alteration in original) (citations omitted); *accord Vanguard Group*, 2014 WL 6694802, at *7 (quotation omitted) (listing same factors with slight modifications). If the party seeking leave to amend shows good cause under Rule 16(b)(4), the Court determines whether leave to amend should be granted under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." *See S&W Enters., L.L.C.*, 315 F.3d at 536.

Turning first to Van Leeuwen's explanation for failing to seek leave to file its proposed crossclaim by the scheduling order's deadline of June 30, 2015, Dkt. No. 44 at 1, Van Leeuwen represents that it has been attempting to obtain contractual indemnification by sending correspondence to Suomy and its former counsel for over a year and believes that it must take more formal steps to protect its interests in

light of the withdrawal of Suomy's counsel and Suomy's subsequent nonparticipation in this litigation. *See* Dkt. No. 72 ¶ 9. Van Leeuwen supports its assertions with two letters dated January 20 and March 30, 2015, to Suomoy and its counsel respectively tendering the defense of this case pursuant to an insurance policy. *See* Dkt. No. 72-2 Ex. B. Suomy's counsel moved to withdraw on September 14, 2015, Dkt. No. 50. The letters Van Leeuwen submits evidence its knowledge of the facts undergurding its crossclaims by March 30, 2015, and evidence Van Leeuwen's awareness before the scheduling-order deadline that Suomy was failing to respond to its previous letter demanding indemnification. *See* Dkt. No. 72-2 Ex. B at 3 (stating that insurer had "yet to receive the courtesy of a response" to previous letter). Thus, on this record, Van Leeuwen has not offered a satisfactory explanation for its failure to move to amend its answer to add its crossclaim before June 30, 2015. *See E.E.O.C. v. Serv. Temps, Inc.*, Civ. A. NO. 3:08-CV-1552, 2009 WL 3294863, at *2 (N.D. Tex. Oct. 13, 2009) ("Given that Smith knew, or reasonably suspected, the relevant facts giving rise to the instant motion well in advance of the deadline, Smith could have served the necessary written discovery in time to obtain the anticipated responses and filed a motion for leave to amend by the date set in the scheduling order.").

To explain their request to extend the discovery deadline, Plaitniffs and Van Leeuwen represent that

> [t]he deadline to complete discovery predated the only day that mediation could be scheduled. As a result, the deadlines did not allow sufficient time to schedule the depositions of the seven expert witnesses that have been retained in the case. Given that the parties do not believe that the additional discovery proposed will affect the pending Motion for Summary Judgment, the movants' preference would be to get a ruling on the Motion for Summary Judgment before going to the significant expense of deposing the experts. An extension of the discovery deadline, Joint Pretrial Order and Final Pretrial Conference deadlines would allow sufficient time to complete discovery.

Dkt. No. 86 ¶ 7. This Court applauds the efforts of parties and their counsel to conduct litigation in a manner that minimizes the potential of multiplying costs.

*See* Fed. R. Civ. P. 1. Nevertheless, if the parties reach an agreement that likely will affect the deadlines set in a scheduling order, Rule 16(b)(4) requires them to seek court approval. *See* Fed. R. Civ. P. 16(b)(4) (allowing modification of schedule "only with the judge's consent"). Hence, Van Leeuwen and Plaintiffs' explanation for missing the discovery deadline falters on this record. *See Serv. Temps, Inc.*, 2009 WL 3294863, at *2 (finding explanation that "[t]he parties agreed to participate in mediation, and an EEOC trial attorney wrote an email to Smith's counsel stating that 'we can conduct the mediation prior to anyone's deposition (while either party can submit paper discovery prior to the mediation, if so desired)'" to be insufficient under first Rule 16(b)(4) factor). Nevertheless, the apparently good-faith efforts of Plaintiffs and Van Leeuwen to reduce the potential burden and expense of this litigation at least partially mitigate the insufficiency of their explanation. *See Hume*, 2016 WL 430432, at *2 (accepting parties' explanation and stating that "[w]hile CGB should have brought this to counsel's attention before that time, the Court is satisfied with counsel's assertion that there was no dilatory or bad faith conduct on the part of CGB").

The remaining three factors, however, favor modifying the scheduling order as the parties request. Van Leeuwen's proposed crossclaim is "important to the resolution of liability among the parties in this case." *Hume*, 2016 WL 430432, at *2 (so finding about crossclaim for contractual indemnity); *see Serv. Temps., Inc.*, 2009 WL 3294863, at *3 (finding proposed amendment important because it "could protect [the movant] from damages for back pay and entitle it to recover attorney's fees"). Van Leeuwen and Plaintiffs do not specify the particular issues to which they believe the outstanding discovery is relevant, but it is reasonable to infer from their motion to amend the scheduling order filed August 26, 2016, that they need to depose all of the designated experts. *See* Dkt. No. 86 ¶ 7. Particularly in a product-liability action where the nature of the alleged defect and causation may be at issue, proceeding to the trial phase without expert discovery makes little sense, so the outstanding discovery is important for Rule 16(b)(4) purposes on this record. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007) (reversing denial of

request to designate expert after scheduling-order deadline, reasoning on second factor that "[the expert testimony is essential" because plaintiff could not prove damages without experts); *Rollins v. St. Jude Med.*, Civil Action No. 08–0387, 2009 WL 2601376, at *4–5 (W.D. La. Aug. 24, 2009) (discussing importance of expert testimony on issues of defect and causation in a product-liability action). As for prejudice and the availability of a continuance, Plaintiffs and Van Leeuwen agree to reopening discovery. Dkt. No. 86 at 1. That is, they propose the preferred cure for any prejudice they may suffer. *See Betzel*, 480 F.3d 708 ("[W]e have repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time." (quoting *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998))). Further, if it chooses to again participate in this litigation, reopening discovery will effectively provide Suomy with a continuance allowing it to cure any prejudice occasioned by Van Leeuwen's assertion of a crossclaim.[4] *See Hume*, 2016 WL 430432, at *2 (reasoning that party "will be minimally prejudiced, as it can move the Court to extend deadlines if necessary to allow it to defend against this new claim").

On balance, good cause exists to amend the scheduling order as Van Leeuwen and Plaintiffs propose. In short, the record shows that a continuance is necessary to prepare this product-liability case properly for trial by allowing expert discovery, if any. Extending the discovery period as the only active litigants propose solves that problem and affords Van Leeuwen and Suomy an opportunity to conduct discovery on a crossclaim that is deemed important under Rule 16(b)(4). *See Rollins*, 2009 WL 2601376, at *6–7 (finding good cause where final three factors favored continuance and first did not, stating that "a continuance of the trial date and the issuance of new deadlines will permit the parties to prepare this case as it should have been prepared").

---

[4] Additionally, this Court must take Plaintiffs' failure to respond to Van Leeuwen's motion for leave to file a crossclaim as "a representation of non-opposition." S.D. Tex. Civ. R. 7.4.

IV. **Conclusion**

For the foregoing reasons, the Court **ORDERS** as follows:

1. Van Leeuwen's motion for summary judgment, Dkt. No. 75, is **GRANTED**. The Court **DISMISSES** Plaintiffs' claims against Van Leeuwen pursuant to Section 82.003(a) of the Texas Civil Practice & Remedies Code;

2. Van Leeuwen's motion for leave to file a crossclaim, Dkt. No. 72, as supplemented, Dkt. No. 76, is **GRANTED**, but the Court directs the Clerk not to enter the proposed pleading attached to that motion, Dkt. No. 72 Ex. A. Instead, the Court grants Van Leeuwen leave to file an amended answer asserting its proposed crossclaim within 14 days after the entry of this order. Van Leeuwen must serve Suomy with its amended answer in accordance with Federal Rule of Civil Procedure 4 and file proof of service complying with Rule 4(l). *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.");

3. The agreed motion to amend the scheduling order filed by Plaintiffs and Van Leeuwen on August 26, 2016, Dkt. No. 86, is **GRANTED**, and the Court amends the scheduling order as follows:

    Discovery must be completed by: November 30, 2016;

    Dispositive motions will be filed by: December 14, 2016;

    Joint Pretrial Order is due: March 9, 2017;

    Docket call and final pretrial conference is set for: March 23, 2017, at 2:00 p.m.

It is so **ORDERED**.

SIGNED this 6th day of September, 2016.

Hilda G. Tagle
Senior United States District Judge